# CHARLESTON.

BLAND *et als. v.* RIGBY *et als.*

Submitted June 13, 1912.    Decided October 21, 1913.

1. FRAUDULENT CONVEYANCES—*Action to Set Aside—Defense—Proof.*

In a suit to set aside a conveyance or transfer of property or a charge thereon for fraud, payment of full, fair and adequate consideration for the property or claim is an affirmative defense on the part of the purchaser or claimant of the lien, to be established by clear proof.    (p. 65).

2. SAME.

To sustain the claim of payment of consideration in such case, when the amounts are large, the testimony of the grantee, if uncorroborated by receipts, memoranda, or other documentary evidence, must be clear, positive, definite, consistent with other evidence offered by him, and free from self-contradiction.    (p. 65).

3. APPEAL AND ERROR—*Disposition of Cause—Defective Pleading.*

If, in a suit by creditors to set aside a conveyance or charge as fraudulent, the evidence establishes the fraud, but the bill is deficient in its allegations, the decree subjecting the property to sale will be reversed and the cause remanded with leave to amend the bill. (p. 66).

(MILLER, JUDGE, absent).

Appeal from Circuit Court, Wetzel County.

Action by J. A. Bland and others against C. F. Rigby and others.    Judgment for plaintiff, and certain defendants appeal.

*Affirmed in Part.    Reversed in Part.    Remanded.*

*David D. Johnson,* for appellants.

POFFENBARGER, PRESIDENT:

Certain town lots, in the town of New Martinsville, and some patent rights were decreed to be sold in this cause to satisfy the claims of Harry Wade, J. A. Bland and M. B. McGee, judgment and execution creditors of C. F. Rigby and E. A. McCabe, late partners as machinists under the firm name of The Rigby Manufacturing Company.    At the time of the decree, the real estate was claimed by Emmett C. Rigby, to whom it had been conveyed *pendente lite,* the patent rights by Mrs. C.

73 W. Va.

F. Rigby and prior liens on the real estate, amounting to about
$9,000.00, by Frank P. McCabe.

The decree stands upon the hypothesis of fraud in the trans-
fers, inferable from the following relations and transactions
among the parties: On March 25, 1901, Wash Dunn and wife
conveyed to E. A. McCabe and C. F. Rigby a lot in the town of
New Martinsville, 60 feet by 100 feet in size. On April 27,
1901, D. W. Gamble and wife conveyed to them another lot 40
by 159 feet. On September 29, 1902, McCabe and Rigby con-
veyed the two lots, together with certain personal property,
consisting of machinery and tools in the buildings thereon, to
S. Bruce Hall, Trustee, to secure, to A. Leschen and Sons Rope
Company, a debt of $2,000.00. On November 19, 1902, Rigby
and his wife conveyed to M. R. Morris, Trustee, Rigby's one-
half interest in the two lots, to secure to Frank P. McCabe, an
alleged debt of $7,000.00, represented as having been evidenced
by a negotiable promissory note, executed by C. F. Rigby. On
April 12, 1904, Rigby and wife and E. A. McCabe conveyed
the two lots and the machinery, tools and appliances thereon
to Frank P. McCabe, by a deed which was admitted to record
on the 26th day of May, 1904. On or about July 11, 1904, S.
Bruce Hall sold, under the deed of trust given to secure A.
Leschen and Sons Rope Company, the two lots here involved, to
Frank P. McCabe for the sum of $2,305.00, of which sum
$768.34 was paid in cash, and for the residue of which McCabe
gave his two notes, payable, respectively, in six and twelve
months. One of the notes was paid February 9, 1905, and the
other May 20, 1905. On the 16th day of September, 1904,
Rigby, for the stated consideration of five dollars, assigned to
his son, Benj. E. Rigby, twelve separate and distinct U. S.
Letters Patent granted to him for inventions. On the next
day, or one month later, as to which the evidence conflicts,
Benj. E. Rigby, for the stated consideration of five dollars, as-
signed said letters patent to his mother, Achsah M. Rigby. By
a deed dated September 13, 1905, Hall, trustee, conveyed
the lots purchased from him as trustee by Frank P. McCabe, to
Achsah M. Rigby, describing her in the deed as having been the
purchaser. In point of fact, Achsah M. Rigby assigned to

Frank P. McCabe three of the letters patent received from her husband through her son, Benj. E. Rigby, in consideration of which he directed a deed for the lots to be executed to her. By a deed dated July 12, 1906, Achsah M. Rigby and her husband conveyed them to Emmett C. Rigby for the recited consideration of $1,800.00.

The dates of the creation of the debts of the three attacking creditors are not disclosed. Wade obtained his judgment for $216.00 September 26, 1904, Bland obtained his for $589.12 and McGee his for $328.05, April 6, 1905. Executions on them were issued May 22, 1905, and this suit was commenced September 29, 1905. The record establishes no firm indebtedness at the date of the execution of the deed of trust in favor of Frank P. McCabe, and there is no proof of the existence of any at the date of the conveyance of the lots to him, April 12, 1904. But, as Wade procured his judgment September 26, 1904, and Bland and McGee theirs on April 6, 1905, these debts may have existed at the time of the conveyance to Frank P. McCabe, and they may have been insisting upon payment. The record of the judgments of Bland and McGee indicates incurrence of their debts, or rather their maturity, on the 19th day of May, 1904, after the execution of the deed and just prior to its admission to record.

The oral testimony in the case consists of the depositions of Frank P. McCabe, C. F. Rigby and Achsah M. Rigby. Neither E. A. McCabe nor Benj. E. Rigby nor Emmett C. Rigby testified, although parties to the transactions complained of. Professing the status of a creditor for more than $9,000.00, Frank P. McCabe was unable to state in detail how he acquired it. He claims to have advanced the $7,000.00 to secure which the deed of trust was executed, and filed a statement with his deposition, showing the dates and amounts of his alleged advancements, aggregating $7,282.51; but this statement was made up and filed sometime after his deposition was taken, and he admits having made such advancements as he did make without any personal knowledge as to the value of the property, or information respecting it other than that given him by the debtors. He knew nothing of the existence of the prior deed of

trust on it in favor of the A. Leschen and Sons Rope Company. Moreover, his lien was on only Rigby's one-half of the property, the total value of which is set forth in the deed of trust at $10,750.00. He says part of the money he claims to have advanced was represented by notes he gave and part of it by checks, but he produces none of the notes or checks, nor shows any payment of notes, nor gives the relative amounts of the checks and notes. Though he claims to have paid the purchase money under the sale made by Hall, trustee, $2,305.00, he was not present when the sale was made and could have had no personal knowledge of the character or amount of the property he was paying the money for. His purchase and payment of the money must have been made by some one else in his name. This he admits in connection with his claim in general terms of payment of the money, but for all that appears, he may have first received the money from the debtors or one of them. Notwithstanding he claims to have put more than $9,000.00 into the property, he permitted the deed of the trustee, made in pursuance of the sale under the deed of trust, to be made to the wife of C. F. Rigby, in consideration of three letters patent, admitted to be of practically no value, without any inquiry or advice as to how that deed would affect his title to the property or his claim for $7,000.00 or the $2,305.00 he claims to have paid to Hall, trustee. The legal effect of that sale and deed, unqualified by any agreement, was the destruction of his deed of trust upon the equity of redemption and of the conveyance made to him by his father and C. F. Rigby. His advancements, if any, were induced, according to his own testimony, by his father, who presumably conducted all of the transactions in which his name appears. It must have been he who made the purchase under the trust deed sale and actually handled the money received by the trustee. His testimony was not taken and the omission thereof is unexplained. C. F. Rigby the other partner, testified, but was unable to state any of the particulars of the transactions between the firm and Frank P. McCabe. His part in these transactions also seems to have been left to the care of E. A. McCabe. Mrs. Rigby has no knowledge of any of these vital matters. The principal purpose of her

testimony was to show she took the property under the deed from Hall, trustee, subject to the claims of Frank P. McCabe, contrary to the legal effect of the deed. McCabe also makes this claim, but neither of them testified to any express agreement to that effect. He allowed the deed to be made to her at the suggestion of his father and C. F. Rigby, and says he is unable to explain why it was made to her and not to himself. He negatives any express agreement for preservation of his claim by the admission of his ignorance of the effect upon them of the sale under the deed of trust. The principal purpose of the testimony of C. F. Rigby was to show the worthlessness of the letters patent in. the condition in which they were at the time they were assigned by him to his son Benj. E. Rigby and the indebtedness of the firm to his son for labor in the sum of about $400.00 as consideration for the assignment. The son's testimony was not taken, but the father and mother both say the firm was indebted to him for 30 days work in the month of May, 1903, as a tool dresser, at four dollars per day, amounting to $120.00, and work at the shop thereafter and up to September 6, 1904, at $2.50 a day, amounting to $247.50.

Frank P. McCabe assumed the attitude of a purchaser in good faith and without notice of the fraud of the debtors. To prevail over him, the creditors must establish the fraud, the transfer to him and his notice of the fraud, but it is incumbent upon him both to allege and prove payment of full, adequate and fair consideration. The issue of payment is an affirmative defense which he must make out by clear and satisfactory proof. *Colston* v. *Miller,* 55 W. Va. 490. His transactions with the insolvent firm involved considerable sums of money. Ordinarily such amounts do not pass from one man to another without a certain degree of formality and preservation of documentary evidence thereof, wherefore a mere claim of payment without the production of written evidence thereof, giving dates, amounts and other particulars, is looked upon with suspicion and generally regarded as unsatisfactory and insufficient to prove the fact. Lack of corroborative evidence of the kind and character usually kept by the parties to important financial transactions is regarded as a badge of fraud. *Colston* v. *Miller,*

cited. Reason concurs with authority in declaring insufficiency of the evidence submitted by McCabe to sustain his claim of payment as against creditors of the fraudulent debtors.

Though the manifest purpose of the bill is to subject the property hereinbefore described to the satisfaction of the claims of the plaintiffs, as having been disposed of by the debtors with intent to hinder, delay and defraud their creditors, and to do this in such manner as to exclude the claims of Frank P. McCabe, the bill does not in terms impeach the $7,000.00 deed of trust nor the conveyance subsequently made to Frank P. McCabe, nor question his claim of payment of the purchase money under the sale by Hall, trustee. Ignoring the conveyance to him, in satisfaction of the alleged trust debt of $7,000.00, the bill prays that he be required to release his trust deed. Treating the A. Leschen and Sons Rope Company debt as having been paid by him, it prays that said company be required to release its lien. It then prays that the tangible property, real and personal, and the letters patent held by Mrs. Rigby, be subjected to sale for satisfaction of the debts of the plaintiffs.

Only in the transfer by McCabe to Mrs. Rigby of the benefit of his purchase at the sale made by Hall, trustee, effected by mere direction of the trustee to make the deed to her, does the bill charge any fraud. Its theory is that the assignments of the letters patent by C. F. Rigby to his son Benj. E. Rigby and by the son to his mother were voluntary, and that in this manner C. F. Rigby furnished the consideration of the transfer of the property in the manner stated, from Frank P. McCabe to his wife. The second proposition seems to be that the sale under the A. Leschen and Sons Rope Company trust deed extinguished the right of Frank P. McCabe under his subsequent deed of trust and the subsequent conveyance to him, and that, by his transfer to Achsah M. Rigby, she obtained full legal and equitable title to the property, stripped and freed from all claims against the same on his part. But this charge of the bill is met by McCabe's answer, denying any intention on his part to release, or treat as satisfied, this $7,000.00 debt or the $2,305.00 he claims to have paid to Hall, trustee, and this averment of the answer is sustained by his testimony. Moreover, Mrs. Rigby, in her testi-

mony, disclaims any purpose or intention to exclude his claims. On the contrary, she distinctly and emphatically says she took the property by the deed from Hall, trustee, subject thereto.

As this deed was made to her, not by Frank P. McCabe himself, but by the trustee, there is no legal impediment to his proof by oral testimony of an equitable interest in the property. According to his testimony, he purchased and paid for it and caused the deed to be made to Mrs. Rigby in trust for himself to the extent of his claims against it. If he had conveyed it to her himself, he might not be permitted to prove such an equity, for the parol evidence offered to establish it, contradicts the terms of the deed, a written contract. *Troll* v. *Carter*, 15 W. Va. 567; *Poling* v. *Williams*, 55 W. Va. 69. If the plaintiffs were creditors of Mrs. Rigby, it might not be permissible to establish it against them, because the deed from Hall, trustee, to her passed the legal title, acquired under a deed of trust prior to the claims of McCabe; to which the lien of the judgment would likely have attached the moment the title passed into her hands; but they are not creditors of hers, and the purpose of the suit is to subject the property as that of the debtors, E. A. McCabe and C. F. Rigby. Therefore, only such interest in the property is liable to claims of these creditors as Mrs. Rigby acquired, and that, according to her own testimony and admissions and the evidence adduced by McCabe, was what may be called an equity of redemption. Of course, the plaintiff could subject that, but nothing more. But the decree goes beyond this, treating the property as standing in the hands of Mrs. Rigby free of all claims, equities or liens in favor of Frank P. McCabe, and accordingly subjects it wholly and unconditionally to sale for satisfaction of the judgments against the insolvent firm.

In the absence of impeachment of Frank P. McCabe's claims, he became the owner of the lots, in equity as well as in law, by his deed from E. A. McCabe and Rigby and his purchase at the trust deed sale. Mrs. Rigby swears she got nothing and claims nothing under the deed from Hall but a sort of an equity of redemption, and although this was not fixed by express agreement at the date of the conveyance to her, no reason is perceived why McCabe cannot hold as against her such interest as

she does not claim, nor any ground upon which the plaintiffs, who are not her creditors, can complain of her admission of his equitable claims, founded upon such large payments and such solemn instruments, the validity and genuineness of which are not challenged by the pleadings.

The purpose of this suit, as disclosed by the bill and the decree entered, was to subject the property to satisfaction of the debts of the plaintiffs, and the evidence is insufficient, as we have indicated, to sustain McCabe's claim of a bona fide purchase, although introduced for that purpose. Both he and the plaintiffs seem to have regarded the suit as one intended to sell the property, free and discharged of his claims, and, if the allegations of the bill were broad enough to impeach the bona fides of his deed of trust, the conveyance to him and his claim of payment of purchase money at the sale made by Hall, trustee, the decree entered would have to be affirmed. The omission of these necessary allegations has resulted in a decree standing upon sufficient evidence and an insufficient bill, in so far as it affects the lots and personal property other than the patents. In such cases, the well established practice is to reverse the decree and remand the cause with leave to the plaintiff to amend the bill.

The patent rights in the hands of Mrs. Rigby were properly held liable for the debts of the plaintiffs. As to them the bill is sufficient, and the evidence of indebtedness to the son as consideration for the assignment thereof to him is very unsatisfactory. He did not testify, and his father, testifying to the indebtedness, admits McCabe kept the books, and he had nothing from which to make up a statement between McCabe and the firm. It is highly improbable that the young man drew no wages from May 1st to September 6th, if he really worked for wages; and he assigned the patents to his mother very soon after he got them in consideration of one dollar and "other bills" he owed her. These transactions between father and son and mother and son belong to a class that are always closely scrutinized when found in the way of creditors, and as to the existence of which very clear proof is required, when attacked by them. Such as has been adduced in support of the assignments of the

patents by C. F. Rigby to his son and by the latter to his mother has been held insufficient by the trial court and no ground is perceived upon which his finding can be disturbed.

For the reasons stated, so much of the decree as holds the two lots and personal property, conveyed to Frank P. Rigby or purchased by him at the trust deed sale made by Hall, trustee, liable for the debts due the plaintiffs and costs of the suit and orders sale thereof, will be reversed. In all other respects it will be affirmed and the cause remanded for further proceedings.

*Affirmed in Part.   Reversed in Part.   Remanded.*